IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**MEAGHIN JORDAN,** *individually*;  **PLAINTIFFS**
**JONATHAN JORDAN,** *individually*;
**MEAGHIN AND JONATHAN JORDAN,**
*on behalf of their minor son, Braylon Jordan*

**V.**  **CAUSE NO. 3:15-CV-220-CWR-LRA**

**MAXFIELD & OBERTON HOLDINGS**  **DEFENDANTS**
**LLC; CRAIG ZUCKER; ASSEMBLE**
**LLC; GREAT AMERICAN E&S**
**INSURANCE COMPANY; EVANSTON**
**INSURANCE COMPANY,** *f/k/a* **ALTERRA**
**AMERICAN INSURANCE COMPANY;**
**INDIAN HARBOR INSURANCE**
**COMPANY**

### ORDER

Evanston Insurance Company, Great American E&S Insurance Company, and Indian Harbor Insurance Company have moved to dismiss the claims brought against them in this suit. The motions were extensively briefed by both sides.[1]

The factual allegations and applicable standard of review have been discussed in a prior Order and need not be repeated here. *See Jordan v. Maxfield & Oberton Holdings LLC*, No. 3:15-CV-220, 2016 WL 1173100, at *1-2 (S.D. Miss. Mar. 22, 2016).

**I.    Evanston Insurance Company**

Evanston argues that Mississippi law prohibits the Jordans from directly suing it for its failure to provide insurance coverage to M&O.

---

[1] The Jordans subsequently sought leave to file a supplemental response, and then asked for two of their opponents' motions to be converted to requests for summary judgment. The movants followed up with their own motion to sever and stay the claims brought against them. Later, Indian Harbor asked to file another brief. The Jordans were unopposed as long as they too could submit their own supplemental memorandum. The result is a rather jumbled record. Its relevance will be discussed below.

The motion will be denied essentially for the reasons contained in the Jordans' response brief: they have brought conspiracy claims against Evanston, not a direct action seeking insurance coverage. There may be other defects with the claims against Evanston, but the argument presented is not one of them.[2]

This motion is denied.

## II.   Great American E&S Insurance Company

Great American contends that each of the Jordans' causes of action brought against it – a violation of the federal Racketeer Influenced and Corrupt Organizations Act (RICO), a violation of Mississippi's anti-racketeering law, and civil conspiracy under Mississippi law – fail to state a claim. The Court will take them up in reverse order.

### A.   Civil Conspiracy

Great American says the civil conspiracy claim is implausible and insufficiently specific. The Court disagrees.

The Jordans' complaint fairly sets forth a conspiracy between M&O and its insurers to defeat pending and anticipated lawsuits (and ongoing regulatory actions) by dissolving M&O. It is perfectly plausible that in an expanding conflagration such as this, an insurance company would advise its insured to simply dissolve to avoid the costs of defending litigation and regulatory action. The facts support motive, means, and opportunity. Great American allegedly furthered the conspiracy by taking no coverage positions in pending litigation involving M&O.

Great American emphasizes that under *Bell Atlantic v. Twombly*, an antitrust case, "parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 [conspiracy] claim." 550 U.S. 544, 557 (2007). In

---

[2] Evanston's attempt to assert new arguments for dismissal in rebuttal is unavailing. *See Meaux v. Mississippi*, No. 1:14-CV-323, 2015 WL 3549579, at *6 (S.D. Miss. June 8, 2015).

*Twombly*, though, the Supreme Court took pains to emphasize that a complaint containing "further factual enhancement," or "a more specific allegation—for example, identifying a written agreement or even a basis for inferring a tacit agreement" between the defendants, is enough to move the case across the line from possible to plausible. *Id.* (quotation marks and citations omitted). Requiring "plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage," the Court wrote; "it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.* at 556; *see Meek v. Gold Coast Skydivers, Inc.*, No. 2:15-CV-4-DPJ-FKB, 2016 WL 81812, at *3 (S.D. Miss. Jan. 7, 2016).

Here, the events of 2012 – the commencement of the CPSC regulatory action, the mounting personal injury claims and lawsuits, and (most importantly) the coordinated filings in the CPSC proceeding and the California declaratory action – are sufficient additional facts. They provide a basis for inferring a tacit agreement between M&O and its insurers to cut and run: wrap up the company and limit everyone's exposure before it snowballed into several substantial judgments. There is a reasonable expectation that discovery will reveal evidence of an illegal agreement.

Great American also presses that the allegations of civil conspiracy are insufficiently pled. "The common elements of a conspiracy to defraud, which a plaintiff must prove, are: (1) a conspiracy, (2) an overt act of fraud in furtherance of the conspiracy, and (3) damages to the plaintiff as a result of the fraud." *Taylor v. S. Farm Bureau Cas. Co.*, 954 So. 2d 1045, 1050 (Miss. Ct. App. 2007) (citation omitted). "Rule 9(b) imposes an additional burden on the plaintiff to detail facts and lay out . . . the who, what, when, where, and how of a fraud." *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1034 (5th Cir. 2010) (quotation

3

marks and citation omitted). As the Fifth Circuit recently held in a products liability case, though,

> *Twombly* and *Iqbal* were designed to avoid subjecting defendants to lengthy and expensive discovery when the plaintiff is merely on a fishing expedition. They are not a basis to shield product manufacturers from liability. Perhaps after discovery Flagg will not prevail, but at a pre-discovery stage of this case, in an area of law where defendants are likely to exclusively possess the information relevant to making more detailed factual allegations, we cannot say that he is merely on a fishing expedition.

*Flagg v. Stryker Corp.*, 647 F. App'x 314, 318 (5th Cir. 2016) (citations omitted) (reversing dismissal where the "complaint includes more than an unadorned, the-defendant-unlawfully-harmed-me accusation").

In this case, any communications laying the foundation for fraudulent dissolution are impossible to obtain without discovery. But the allegations in the Jordans' complaint describing the tangible result of those communications are sufficiently detailed to proceed. They have set forth the means by which (how) Great American and the other insurance company defendants (who) helped M&O become judgment-proof as to the Jordans' personal injury claims while simultaneously reducing their own financial exposure (what). Great American participated in the conspiracy in 2012 (when) by representing in court filings (where) that M&O no longer existed[3], an allegedly false claim that ensured that injured litigants, to include the Jordans, would alone have to bear the damage caused by M&O's product.

"Judicial experience and common sense indicate a reasonable expectation that discovery will reveal evidence supporting the claims against [the defendants]. If they do not, [the defendants] may revisit the issue under Rule 56." *Meek*, 2016 WL 81812, at *3. The motion to dismiss this claim is denied.

---

[3] Recall the Jordans' claim that M&O remained in business after its "dissolution." Assuming the truth of that allegation, as the Court must at this stage, leads to an inference that Great American's representation was false.

B.   **State Racketeering**

Great American next argues that the state-law anti-racketeering claim fails because Mississippi law did not include mail and wire fraud as predicate racketeering activities until July 1, 2014. *See* Miss. Code Ann. § 97-43-3.1(1)(e). The Jordans respond that the law requires only that the racketeering activities occur after 1986, the year when Mississippi's anti-racketeering law went into effect. *Id.* § 97-43-3(d).

The Jordans' argument is unpersuasive. Mississippi law defines "pattern of racketeering activity" as "engaging in at least two (2) incidents of racketeering conduct." *Id.* Assuming that mail and wire fraud are now incidents of racketeering conduct – the new law lists them as predicate acts for an "organized theft or fraud enterprise" – they were not incidents of racketeering conduct before July 1, 2014. *Id.* § 97-43-3.1(1)(e).

When the alleged racketeering in this case occurred, therefore, the defendants could not have known that mail and wire fraud would subject them to liability under this statute. The Jordans have failed to provide any authority for applying the 2014 amendments retroactively.

This claim is dismissed.

C.   **RICO**

"RICO provides a private right of action for treble damages to any person injured in his business or property by reason of the conduct of a qualifying enterprise's affairs through a pattern of acts indictable as mail fraud." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008). In certain instances, attorney's fees can qualify as injury to property. *See Warnock v. State Farm Mut. Auto. Ins. Co.*, No. 5:08-CV-1-DCB-JMR, 2008 WL 4594129, at *4-5 (S.D. Miss. Oct. 14, 2008).

The parties have dedicated substantial time and effort to briefing the RICO claim. They have also been patient in awaiting a ruling from the Court. Unfortunately, the record is insufficient to adjudicate the claim today.

The Jordans filed their second amended complaint on April 28, 2015. At that time, their route to resuscitating M&O in Delaware state court was less than pellucid, and their alleged damages were too close to bodily injury to state a claim under RICO. Much has changed in the intervening 18 months. For one, there is an actual legal entity to defend the product liability half of this lawsuit. And in the conspiracy half of this suit, the conclusion of the Delaware action has resulted in tangible damages which RICO may permit. *See id.*

As the defendants have observed, though, none of those developments are in the operative complaint. The record is a muddle of sur-rebuttals and sur-sur-rebuttals. Each motion for leave to file adds new allegations and layers of complexity, as the Jordans attempt to bootstrap new facts into the pleadings and the defendants make new arguments for dismissal.

The defendants argue with some force that the Jordans should not be permitted to file a third amended complaint. It is true that there is some prejudice inherent in the cost of updating and re-filing legal arguments. Still, there are more compelling reasons in favor of amendment.

First, the need for amendment is not the fault of any party; facts on the ground have far eclipsed the allegations in the operative complaint. *E.g.*, *Republic Title of Texas, Inc. v. First Republic Title, LLC*, No. 3:14-CV-3848-B, 2015 WL 11120994, at *2 (N.D. Tex. Aug. 10, 2015) ("Plaintiff seeks to amend its complaint so as to reference conduct that occurred *after* the filing of its Original Complaint. Therefore, it would have been impossible for it to have raised these allegations at the time it submitted its original pleadings."). Nor have the Jordans repeatedly failed to cure prior deficiencies. Although we are presently discussing the second amended

complaint, this is the first time the complaint has been subjected to the crucible of motion practice. Third, a case of this significance deserves a clean record for proper judicial review. A muddled record creates its own form of prejudice to the bench and bar. *See Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 784 (5th Cir. 2007). And finally, the Court's review of the submitted RICO authorities suggests that now, in the wake of the Delaware action, amendment would not be plainly futile.

"[I]t is well-established that plaintiffs who may still have a viable avenue to recover should be granted leave to amend their complaint and make their 'best case.'" *Boutwell v. Time Ins. Co.*, No. 3:11-CV-689-CWR-LRA, 2013 WL 53902, at *4 (S.D. Miss. Jan. 3, 2013) (citation omitted); *see also Morrison v. City of Baton Rouge*, 761 F.2d 242, 245-46 (5th Cir. 1985) (affirming amendment of complaint, more than three years after early dispositive motion practice, which permitted plaintiffs to make their "best case"); *Travis v. City of Grand Prairie, Texas*, --- F. App'x ---, 2016 WL 3181392, at *5 (5th Cir. June 7, 2016) (affirming denial of leave to file fourth amended complaint where "the district court gave [plaintiff] ample prior opportunities to plead his best case"). It is time for the Jordans to put forward their final and best complaint.

The Jordans are therefore ordered to file a third amended complaint within 10 days. This "short and plain statement" shall not exceed 50 pages. Fed. R. Civ. P. 8(a)(2). Motions to dismiss the RICO claim, assuming that one remains and the defendants still think it meritless, shall be filed 21 days after that. The remainder of the briefing shall proceed on the usual schedule set forth in the Local Rules. No additional pages or supplemental briefs will be permitted during this stage of litigation. Whether any discovery should proceed on the state-law conspiracy count is reserved to the discretion of the Magistrate Judge.

Lastly, the parties are again encouraged to consider whether the RICO claim can be resolved. The defendants have presented several compelling arguments for dismissal and will no doubt present several more in their forthcoming memoranda. And, while those arguments can likely be adjudicated before the year is out, the additional delay in this case must be weighed against the expected benefit of the cause of action. The expected benefit may be low relative to the size of the personal injury judgment the Jordans seek. The costs of defense may even be eclipsing the damages the Jordans could hope to achieve with the RICO claim, if any RICO-related attorney's fees are limited to their success on that and only that claim.

For these reasons, the motion to dismiss is granted in part and denied in part.

### III.     Indian Harbor Insurance Company

Because Indian Harbor's motion is substantially similar to Great American's, it will be granted in part and denied in part for the same reasons.

### IV.     Conclusion

Evanston's motion to dismiss is denied. Great American and Indian Harbor's motions to dismiss are granted in part and denied in part. The motions to file supplemental briefs are granted, the motion to convert is denied, and the motion to stay and sever is denied.

**SO ORDERED**, this the 30th day of September, 2016.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE
